381 A.2d 519.

SHERWOODE A. TAFFINDER *et al. vs.* OSWALD THOMAS *et al.*

DECEMBER 20, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

Doris, J.   This civil action was brought to enjoin the defendants from interference with and trespass upon a triangular parcel of land to which the plaintiffs claim ownership. A prayer for general relief was also included. The defendants filed a counterclaim, seeking a determination that the disputed property was owned by them and an injunction against the plaintiffs' use of the land. The case was heard by a justice of the Superior Court sitting without

a jury. The trial justice found that the plaintiffs had acquired title to the property through adverse possession and recorded deed, and entered an order permanently enjoining the defendants from trespassing upon and from erecting a building on any part of the parcel. The counterclaim was dismissed due to the defendants' failure to establish title by adverse possession. The defendants now appeal from the judgment to this court.

The plaintiffs and defendants own adjoining real estate located on the westerly side of Bellevue Avenue in the city of Newport. The disputed parcel is triangular in shape and lies in front of a building owned by the Taffinders. The strip of land has easterly frontage of approximately nine feet on Bellevue Avenue, and a depth on the northerly side of about 21 feet running from Bellevue Avenue to the corner of the Taffinders' building. This northerly edge is bounded by the Thomas' property. The Taffinders obtained title to their property by a recorded deed from Felix F. Cowey and wife, dated May 11, 1967. The defendants' real estate was acquired through a recorded mortgagee's deed from Citizens Savings Bank on November 4, 1959. After a fire destroyed an apartment house on the Thomas property in July 1974, defendants filed building plans showing a portion of the proposed new structure situated on the disputed parcel. The deeds of the respective parties were then examined to determine ownership, and it was discovered that neither the Taffinders nor the Thomases had record title to the strip of land.

The plaintiffs subsequently claimed ownership of the property through adverse possession and a quitclaim deed obtained from the heir of Marie Cottrell, who was found to have record title to the parcel. The defendants also asserted title to the disputed triangle through adverse possession. The factual circumstances which led the trial justice to determine that the Taffinders had established ownership of the parcel through adverse possession are set out below and form the basis of the issues on appeal.

The defendants argue here that plaintiffs do not have title by adverse possession because their occupation of the land did not satisfy the statutory time period and was not hostile toward the interest of the record owner. The defendants further assert that neither plaintiffs' original deed nor their quitclaim deed acquired from the heir give plaintiffs title to the property, and that ownership in the parcel can be found in defendants' chain of title.

It is settled that the findings of fact of a trial justice sitting without a jury will be given great weight and will not be disturbed on appeal unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence. *Rehab* v. *Lemenski,* 115 R.I. 576, 350 A.2d 397 (1976). This policy has been specifically applied to cases involving claims of title through adverse possession. *Chace* v. *Anarumo,* 104 R.I. 48, 241 A.2d 628 (1968); *Sherman* v. *Goloskie,* 95 R.I. 457, 188 A.2d 79 (1963).

The statutory period in Rhode Island required for the establishment of title through adverse possession is ten years. The possession of the property must be uninterrupted and peaceful during this period, and under a claim of right. Not only may the purported landowner himself make such a claim, but the actions of his tenants over the statutory period may inure to his benefit. The owner may also tack on the period of possession of his predecessor from whom he derived title. General Laws 1956 (1969 Reenactment) §34-7-1. Therefore, the Taffinders, having entered into possession of the property as recently as 1967, only eight years before the conflict over the triangular parcel arose, had the burden of proving that their grantor had also claimed the strip and was in quiet possession for at least two years previous to the grant. This they attempted to do largely through Joseph Comiskey, a tenant for 18 years of the building in front of which the disputed parcel is situated.

Mr. Comiskey operated a business on the lower level of this building and lived in an upstairs apartment. As defendants argue, however, and this court has stated, prescriptive rights cannot be established through a tenant unless the area in question is either expressly or impliedly within the terms of the lease. *Jerry Brown Farm Ass'n* v. *Kenyon*, 119 R.I. 43, 375 A.2d 964, 967 (1977); *Bell* v. *Bomes*, 78 R.I. 37, 41, 78 A.2d 362, 364 (1951). Hence, it was necessary for the Taffinders to show that their grantor and the former landlord of Mr. Comiskey, Felix Cowey, had intended the use of the triangular parcel to be included in Mr. Comiskey's lease and that plaintiffs continued this practice. Mr. Comiskey was a tenant at will, except for one brief period, and therefore there was no written lease in which to find an express or implied authorization. As an alternative, the Taffinders presented evidence showing that their grantor believed the bounds of his property to include the triangular strip. Statements made by Cowey to Sherwoode Taffinder so indicating were properly admitted to show the nature and extent of Cowey's occupation. *Saunders* v. *Kenyon*, 52 R.I. 221, 226, 159 A. 824, 825 (1932); *Faulkner* v. *Rocket*, 33 R.I. 152, 171, 80 A. 380, 388 (1911). *See also* 6 Wigmore, *Evidence* §1778 (Chadbourn rev. ed. 1976).

Mr. Comiskey testified that both Mr. Cowey and the Taffinders had permitted him to park his car on the parcel and that he had done so continuously since he entered into the rental agreement. This testimony, combined with Cowey's assertions of ownership, led the trial justice to find that the use of the disputed parcel as a parking area was implied in the lease arrangements. Therefore, the use by the tenant Comiskey inured to the benefit of the landlords Cowey and Taffinder for the purpose of tacking their periods of adverse occupation.

The defendants argue that the trial justice had no conclusive grounds upon which to base this finding and that Comiskey's occupation of the parcel was merely trespassory. However, we cannot say that the trial justice was clearly

wrong or ignored the weight of the evidence, particularly where Cowey asserted ownership of the property on his own behalf, and therefore we will not disturb his findings. *Chace* v. *Anarumo* and *Sherman* v. *Goloskie,* both *supra.* The tenant's occupation of the land thus satisfied the statutory ten-year period required to obtain title through adverse possession.

Once the period is fulfilled, an examination of the adverse nature of the occupation remains. It is well settled that the possession must be "actual, open, notorious, hostile, under claim of right, continuous, and exclusive." *Sherman* v. *Goloskie, supra* at 465, 188 A.2d at 83. In the instant case, tenant Comiskey established not only that he parked his car continuously on the parcel but also that he frequently asked the owners of other vehicles to remove them from the area. These requests were often made to defendants' tenants, who attempted to park their moving vans on the strip. Comiskey also placed a "No Parking - Private" sign in front of the building some six years before the dispute. Further, Comiskey testified that he shoveled snow, raked leaves and trimmed the grass between the flagstones on the triangular parcel until the Taffinders bought the property, at which time plaintiffs assumed those duties. The trial justice accepted this testimony and found that plaintiffs, on their own and through Comiskey, had exercised dominion over the parcel openly, continuously, under claim of right, and to the exclusion of others.

The defendants insist that even if such displays of ownership did occur, that strict proof is required to show that the true owners of the property were put on notice of the hostile possession. Strict proof of acts of dominion inconsistent with the claims of any other purported owner is clearly necessary. *Chace* v. *Anarumo, supra,* at 51, 241 A.2d at 629; *Sherman* v. *Goloskie, supra,* at 466, 188 A.2d at 83. The defendants argue that the evidence presented by plaintiffs was not sufficient to meet this standard of proof because it was not shown that the record owner could clearly be charged with

constructive notice of the open, hostile and exclusive occupation. However, this court has made it clear that the true owner will be charged with knowledge of whatever occurs upon his land in an open manner. The proof required is merely a showing that the adverse possessor claimed the property as his own against the entire world. *Id.* In the instant case, the Taffinders and their predecessor occupied the triangular parcel in a hostile manner toward the rights of all others, including the record owner, of whom they were in ignorance for some time. Here, hostility does not connote a communicated emotion, but rather action inconsistent with the claims of others. Where a person mistakes his boundary, as here, but continuously asserts dominion over the property for the statutory period, he has been a hostile occupant of the land. *LaFreniere* v. *Sprague,* 108 R.I. 43, 50-51, 271 A.2d 819, 823 (1970); *Dodge* v. *Lavin,* 34 R.I. 514, 518, 84 A. 857, 858 (1912). Therefore, we find that defendants' contention that plaintiffs did not meet their burden of proof is without foundation.

Furthermore, defendants may not assert the weakness of plaintiffs' claim in relation to a third party as a means of strengthening their own position. *See Landini* v. *Day,* 264 Cal. App. 2d 278, 70 Cal. Rptr. 260 (1968). In order to prevail, the Thomases would have to establish their own title through adverse possession even if the Taffinders were not able to show occupation hostile to the title of the record owner. This they were unable to do. The trial justice found little to support defendants' claim of ownership before 1974 when defendants became aware that the parcel might belong to them. In fact, they appeared to acquiese in the boundary line established by the Taffinders and their predecessor for the statutory period. This court has stated that such acquiescence is the equivalent of an agreement as to the boundary line and bars further argument. *Rosa* v. *Oliveira,* 115 R.I. 277, 278-79, 342 A.2d 601, 602 (1975). Therefore, defendants could acquire no greater title to the disputed property even if their contention that plaintiffs

failed to offer the proof necessary to establish title by adverse possession were sound.

The defendants used a similar strategy in attempting to prove that since plaintiffs' deed did not include a description of the triangular parcel, it was intended to be included in defendants' deed. Again, this reliance upon the defect in the title of another to establish one's own rights is misplaced. The Thomases cannot claim title based on speculations as to the intent of a grantor in their chain of title. Furthermore, the Taffinders obtained a quitclaim deed from the heir of Marie Cottrell, thus acquiring whatever title was vested in the apparent record owner. Even if the heir had no rights to convey, as defendants contend, plaintiffs' title is unaffected since it was established through adverse possession. Again, defendants gain no greater rights in themselves by asserting possible defects in either of plaintiffs' deeds. *Landini* v. *Day, supra.*

We conclude that the trial justice did not disregard the weight of the evidence in holding that the Thomases did not have record title nor had acquired ownership through adverse possession. The defendants' arguments on appeal concerning deficiencies in the plaintiffs' title are without merit and ineffective in establishing title in the defendants.

The defendants' appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Ray H. Durfee,* for plaintiffs.

*Raymond A. Thomas,* for defendants.